UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:

AJW OFFSHORE, LTD., *et al*.,

         Debtors in Foreign Proceedings.

Chapter 15

Case Nos.: 13-70078-ast
13-70082-ast
13-70085-ast
13-70087-ast
(Jointly Administered)

## MEMORANDUM OPINION AUTHORIZING ADDITIONAL RELIEF PURSUANT TO 11 U.S.C. § 1521

Pending before this Court is the general request of the duly appointed foreign representatives in these four Chapter 15 cases for additional relief pursuant to 11 U.S.C. § 1521(a)[1], including the right to seek turnover of estate assets and records under §§ 542 and 543, authority to conduct discovery, and entrustment with the administration and realization of estate assets. For the reasons stated below, this Court will grant the additional relief sought, conditioned in accordance with § 1522 on the requirement that the foreign representatives file a motion on notice to seek specific turnover or specific discovery.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(A), (O) and (P), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

### Background

*The Offshore Entities*

The four foreign entities at issue are AJW Offshore, Ltd. ("Offshore I"), AJW Master Fund, Ltd. ("Master I"), AJW Offshore II, Ltd. ("Offshore II"), and AJW Master Fund II, Ltd.

---

[1] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code").

1

("Master Fund II") (collectively the "Offshore Funds"). The Offshore Funds are Cayman Islands exempted liability companies which are in liquidation proceedings pending before the Grand Court of the Cayman Islands, Financial Services Division (the "Cayman Islands Proceedings" before the "Cayman Court"). The petitioners in these Chapter 15 cases are Ian Stokoe and David Walker, both of PwC Corporate Finance & Recovery (Cayman) Limited ("Petitioners"), who were appointed as joint official liquidators of the Offshore Funds by the Cayman Court.

According to Petitioners[2], the investment manager of the Offshore Funds was a New York limited liability company called First Street Manager II, LLC ("First Street"), which was responsible for identifying and executing investments. First Street is solely owned and managed by the N.I.R. Group, LLC ("NIR"), an unregistered investment advisor located in Roslyn, New York. Corey Ribotsky ("Ribotsky") is the manager and principal owner of NIR, through which he controlled the operations of First Street.[3] Acting through NIR and First Street, Ribotsky employed an investment strategy of seeking private investments in public equities, referred to as

---

[2] Petitioners commenced these Chapter 15 cases by filing the Official Form B1 Chapter 15 petitions for each of the Offshore Funds (the "Petitions") [dkt item 1], along with the Verified Petition of Foreign Representatives Ian Stokoe and David Walker in Support of Applications for Recognition of Foreign Main Proceedings Pursuant to 11 U.S.C. § 1517 and Additional Relief (the "Verified Petition") and the various exhibits attached thereto [dkt items 3, 5-7]. The information regarding the Offshore entities and the allegations made by Petitioners is derived therefrom, unless otherwise noted.

[3] According to Petitioners, Offshore I was incorporated as an exempted liability company under the Cayman Islands Companies Law in 2001 and designed primarily to accommodate eligible non-US investors. Master Fund I was incorporated under the Cayman Islands Companies Law in 2007. NIR was the sole owner of First Street, which owned 100% of Offshore I's voting shares. Offshore I, in turn, owned approximately 70% of Master Fund I; the remaining 30% ownership interest in Master Fund I belonged to the U.S. based entity Qualified Partners I, LLC ("Qualified Partners I"), an investment manager that NIR also controlled. In November 2008, Ribotsky/NIR restructured Offshore I and Master Fund I, by forming Offshore II, again, designed principally to accommodate eligible non-U.S. investors, U.S. based Qualified Partners II, LLC ("Qualified Partners II") and Master Fund II. The ownership structure of Master Fund II also mirrored the ownership structure of Master Fund I. The sole shareholders and feeder funds of Master II were Offshore II and Qualified Partners II, just as Offshore I and Qualified Partners I were the sole shareholders of Master Fund I. First Street was the investment manager of Offshore II and Master Fund II. As with Offshore I, First Street owned 100% of the voting shares of Offshore II, which, in turn, owned the majority of Master Fund II.

"PIPE", under which the Offshore Funds provided financing to micro-cap[4] distressed, emerging growth, and start-up companies in exchange for convertible debentures of these entities. This investment strategy ultimately proved unsuccessful, resulting in the liquidation proceedings before the Cayman Court.

Petitioners assert that Offshore I had 44 investors, that Offshore II had 156 investors, and that Master Fund I and Master Fund II each had two investors, their feeder funds. Petitioners further assert that the last audited accounts for any of the Offshore Funds were for the year ended December 31, 2007, and show that Master Fund I had $694.4 million in net assets and Offshore I had $454.9 million in net assets; this audit was conducted prior to the creation of Offshore II and Master Fund II. Subsequently, the Offshore Funds' auditor prepared U.S. tax returns for the year ended December 31, 2010, utilizing information and valuations supplied by NIR. Based on information from these tax returns, which Petitioners assert are the most recent, the net assets of the Offshore Funds appeared to be stated to be as follows: Master Fund I – $141.5 million, Offshore I – $122.4 million, Master Fund II – $556.1 million, and Offshore II – $376 million; however, Petitioners question the reliability of these valuations, and believe they were improperly inflated. The assets of the Offshore Funds consist primarily of convertible debentures issued by the micro-cap entities, as well as various promissory notes.

On September 28, 2011, the Securities and Exchange Commission commenced a civil action against Ribotsky and NIR before the United States District Court for the Eastern District of New York[5], alleging various securities laws violations in connection with their roles managing

---

[4] According to the Securities and Exchange Commission, "[t]he term 'microcap stock' applies to companies with low or 'micro' capitalizations, meaning the total value of the company's stock. Microcap companies typically have limited assets." Microcap Stock: A Guide for Investors, http://www.sec.gov/investor/pubs/microcapstock.htm (last visited Mar. 18, 2013).

[5] *Securities and Exchange Commission v. The NIR Group, LLC, et.al.*, 11-cv-04723, (E.D.N.Y. filed Sept. 28, 2011).

the investments of the Offshore Funds and related on-shore funds (the "SEC Action").[6] These allegations of wrongdoing include, *inter alia*, fraud and self-dealing by Ribotsky through NIR, the artificial inflation of the Offshore Funds' financial performance data, and the impermissible transfer of money between the Offshore Funds and Ribotsky's various entities. The SEC Action against Ribotsky and NIR remains pending.

*The Chapter 15 Recognition Proceedings*

On January 7, 2013, Petitioners filed petitions for recognition under Chapter 15. Following a recognition hearing held on February 4, 2013 (the "Recognition Hearing")[7], this Court determined, *inter alia*, that Petitioners are the duly appointed foreign representatives of the Offshore Funds under § 101(24), and that the Cayman Islands Proceedings are foreign main proceedings within the meaning of § 101(23) and are entitled to recognition by this Court pursuant to § 1517(a). The Court further determined that the Cayman Islands is the location of the Offshore Funds' "center of main interests" and, as such, the Cayman Islands Proceedings are entitled to recognition as foreign main proceedings pursuant to §§ 1502(4) and 1517(b)(1). Thus, Orders of recognition for each of the Offshore Funds were entered on February 5, 2013, under which Petitioners were granted all relief provided pursuant to § 1520, without limitation (the "Recognition Orders"). [dkt item 31].

---

[6] Ribotsky formed several U.S. based on-shore funds with similar investment strategies -- AJW Partners, LLC, AJW Partners II, LLC, New Millennium Capital Partners II, LLC, New Millennium Capital Partners III, LLC, and Qualified Partners I and II.

[7] After filing the Petitions, Petitioners filed an application for entry of an order for joint administration of the Offshore Funds cases, which this Court entered on January 11, 2013 designating AJW Offshore, Ltd. as the lead case. [dkt item 16].

As part of the Verified Petition, Petitioners also sought additional relief under each subsection of § 1521(a), other than (a)(3), and not under (b).[8] Significantly, Petitioners requested authority to seek turnover under both §§ 542 and 543[9] pursuant to § 1521(a)(7). Petitioners' moving papers indicate they have been unsuccessful in recovering books and records from professionals retained by the Offshore Funds, and now seek this Court's authority to grant turnover of them.

Following recognition, this Court set a hearing for February 20 to consider Petitioners' request for additional relief (the "Additional Relief Hearing"). Due notice of the Recognition Hearing was given. One objection to Petitioners' request for additional relief was filed by the law firm of Bingham McCutchen LLP ("Bingham" and the "Bingham Objection"), which did not challenge this Court entrusting the foreign representatives with the administration and realization of the Offshore Funds' assets under § 1521(a)(5) or their general right to seek discovery. [dkt item 40].

---

[8] Petitioners request for § 1521 additional relief was contained within the Verified Petition, [dkt item 3], along with a request for pre-recognition relief pursuant to § 1519; Petitioners also filed a Motion for Provisional Relief Pursuant to § 1519 [dkt item 4], and the Memorandum of Law in Support [dkt item 7]. At the Recognition Hearing, the Court only considered the request for recognition. Rather than file a separate motion for § 1521 additional relief, Petitioners relied on their request for § 1521 relief contained in the Verified Petition. Petitioners also generically requested authority to bring avoidance actions in the United States under Cayman Islands law and "out of an abundance of caution and to avoid unnecessary litigation" asked that this Court acknowledge that § 1509(f) applies to Petitioners. [dkt item 7]. Section 1509(f) provides:

> [n]otwithstanding any other provision of this section, the failure of a foreign representative to commence a case or to obtain recognition under this chapter does not affect any right the foreign representative may have to sue in a court in the United States to collect or recover a claim which is the property of the debtor.

11 U.S.C. § 1509(f). However, this generalized request for relief is not properly now before the Court, and the Court advised Petitioners at the Additional Relief Hearing that it was not considering this request at this juncture.

[9] As a general matter, §§ 542 and 543 provide that parties holding property of the estate are required to turn over that property to the trustee. *See* 11 U.S.C. §§ 542, 543. Section 542 addresses circumstances in which estate property is held by a noncustodial party, while § 543 applies when property of the estate is held by a custodian. *Id.*

5

At the Additional Relief Hearing, Petitioners withdrew without prejudice their request for additional relief under § 1521(a)(1) and (2)[10] and asserted that they may access turnover powers via § 1521(a)(7). [dkt item 7]. Also at the Additional Relief Hearing, Bingham's Objection, which was broadly drawn, was narrowed to: (1) objecting to Petitioners' request for authority to seek turnover under either § 542 or § 543; and (2) objecting to any order directing Bingham to turn over records under § 542(e).[11] Bingham essentially argued that allowing Petitioners to utilize these turnover powers was not authorized by the statute and was not necessary, as entrusting Petitioners with the administration and realization of all of the Offshore Funds' assets that are located within the territorial jurisdiction of the United States pursuant to § 1521(a)(5), to which no party objected, would subsume the powers of turnover. Bingham further argued that § 103's failure to expressly incorporate §§ 542 and 543 into Chapter 15 further supports their position. This Court disagrees, and for the following reasons overrules Bingham's Objection.

---

[10] Sections 1521(a)(1) and (a)(2) provide:

> Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including –
>
> (1) staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a) ; [or]
>
> (2) staying execution against the debtor's assets to the extent it has not been stayed under section 1250(a).

11 U.S.C. § 1521(a)(1)-(2).

[11] Section 542(e) states, "[s]ubject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee." 11 U.S.C. § 542(e).

**Discussion**

"Chapter 15 implements the United Nations Commission on International Trade Law (UNCITRAL) Model Law on Cross–Border Insolvency;" courts interpreting Chapter 15 are required under § 1508 to "consider its international origin, and the need to promote an application of th[e] chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions in interpreting its provisions". *In re Condor*, 601 F.3d 319, 321 (5th Cir. 2010) (quoting 11 U.S.C. § 1508). Chapter 15 both expressly authorizes certain relief to be accorded and explicitly limits other relief which may be provided. For example, § 103(a) provides that Chapter 1, "sections 307, 362(o), 555 through 557, and 559 through 562" automatically apply in a case under Chapter 15, and § 1523(a) immediately upon recognition provides a foreign representative with standing in cases regarding the debtor pending under another chapter of the Bankruptcy Code "to initiate actions under sections 522, 544, 545, 547, 548, 550, 553, and 724(a)". 11 U.S.C. §§ 103(a); 1523(a). However, while § 1521(a)(7) authorizes a Court to grant "any additional relief that may be available to a trustee," such relief may not include "relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)." 11 U.S.C. § 1521(a)(7). In other words, a foreign representative may not utilize these avoidance powers in a Chapter 15 case, and may only do so in a case pending or filed under another chapter.[12]

Chapter 15 is silent as to the applicability or inapplicability of other sections of the Bankruptcy Code, specifically including §§ 542 and 543. Thus, determining whether Petitioners are entitled to utilize §§ 542 and 543 requires an analysis of the relevant provisions of Chapter

---

[12] Upon recognition, a foreign representative may commence a case for a debtor under another chapter of the Bankruptcy Code. 11 U.S.C. § 1511.

7

15 and related Bankruptcy Code provisions, case law under prior § 304[13], and consideration of whether granting such relief is in the interests of international comity. *See Condor,* 601 F.3d at 319-29.

*Statutory Construction*

The first consideration in determining whether turnover is available as part of the "any additional relief" available under § 1521(a)(7) is statutory construction – that is, what did Congress provide under the statute. Therefore, this Court's analysis necessarily begins by looking to the language of the statute itself to determine if the statute is plain or ambiguous. *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989); *see also In re Miller*, 462 B.R. 421, 429 (Bankr. E.D.N.Y. 2011). "[I]n determining plainness or ambiguity, courts are directed to look 'to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *In re Phillips*, 485 B.R. 53, 56 (Bankr. E.D.N.Y. 2012), quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). If the statutory language is clear, a court's analysis must end there. *Hartford Underwriters Ins. Co. v. Union Planters Bank, Nat'l Ass'n*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.").

However, "[s]tatutory language is ambiguous if it is susceptible to two or more reasonable meanings." *Phillips*, 485 B.R. at 56. In that setting, where the plain language as clarified by context fails to resolve any statutory ambiguity, a court may resort to canons of statutory construction to aid in its interpretation. *United States v. Colasuonno*, 697 F.3d 164, 173 (2d Cir. 2012); *United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000). Significantly,

---

[13] "Congress intended that case law under [former] section 304 apply unless contradicted by Chapter 15." *In re Condor,* 601 F.3d 319, 328 (5th Cir. 2010), citing H.R. REP. NO. 109-31 (2005), 2005 WL 832198.

statutory construction is a holistic endeavor; thus, a statute must be interpreted in light of the statutory scheme as a whole. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 371 (1988); *Phillips*, 485 B.R. at 59.

Thus, this Court will first consider the plain language of § 1521(a)(7). Section 1521(a) provides that the bankruptcy court may grant a foreign representative "any appropriate relief," including staying various aspects of court proceedings involving the debtor or its assets, suspending rights to transfer, encumber or dispose of the debtor's assets, providing for discovery, granting powers to the foreign representatives to administer the debtor's U.S. assets and, specifically as to § 1521(a)(7), "granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)." 11 U.S.C. § 1521(a)(7). Notably, §§ 542 and 543 are relief that may be available to a trustee and are not among those sections explicitly excluded. Thus, the plain language allows a court to allow a foreign representative to utilize turnover subject, as § 1521 requires, to sufficient protections under § 1522.

Moreover, Congress did not otherwise preclude a foreign representative from being given authority to seek turnover under § 542 or § 543. The Bankruptcy Code in § 103(a) provides that "chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title, and this chapter, sections 307, 362(o), 555 through 557, and 559 through 562 apply in a case under chapter 15." 11 U.S.C. § 103(a). Congress did not use a limiting phrase such as "only" in listing the sections which have immediate application in Chapter 15 cases. *See In re Pro Fit Holdings, Ltd.*, 391 B.R. 850, 866 (Bankr. C.D. Cal. 2008)[14]; *see also In re Fairfield Sentry*, 452 B.R. 52,

---

[14] The *Pro Fit* court stated:

> It is highly unlikely that a court can simply ignore all the rest of the bankruptcy code and the other provisions relating to bankruptcy cases in the United States, just because they are not specifically

59 (Bankr. S.D.N.Y. 2011). This is particularly persuasive given that "[s]ection 1521 is a broad reservoir of equitable power" which enables courts to "grant any appropriate relief . . . to effectuate the purpose of chapter 15 and to protect the assets of the debtor or the interests of creditors." LEIF M. CLARK, ANCILLARY AND OTHER CROSS–BORDER INSOLVENCY CASES UNDER CHAPTER 15 OF THE BANKRUPTCY CODE: A COLLIER MONOGRAPH, § 7[2] (2008) ("CLARK, CHAPTER 15").

Further, if § 103 was intended to constitute the constellation of Code provisions applicable in Chapter 15, that would render § 1521(a)(7) meaningless. Section 1521(a)(7) provides that a bankruptcy court may "grant[] any additional relief that may be available to a trustee, except for" specified avoidance actions; if Congress had intended that the only powers available to a debtor or trustee which are also available to a foreign representative are those expressly incorporated by § 103, then § 1521(a)(7) serves no purpose, particularly given that § 1511 expressly authorizes a foreign representative to commence another case under another chapter of the Bankruptcy Code and § 1523 grants a foreign representative standing to bring the excluded avoidance actions in another case commenced under another chapter. Moreover, if a foreign representative was only intended to utilize turnover if another case was pending under the Bankruptcy Code, then § 1523 would grant the foreign representative standing to seek turnover in a case pending under another chapter in addition to use of the excluded avoidance powers. This Court will not adopt an analysis that renders § 1521(a)(7) meaningless. *See Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (courts should hesitate to "adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.")

---

mentioned in chapter 15 or § 103. The better reading is that many other provisions of the bankruptcy code can be applicable in a chapter 15 case: Some should apply in most cases, while others should be applied only on a case by case basis.

*Pro Fit Holdings, Ltd.*, 391 B.R. at 866.

Thus, the Bankruptcy Code does not prohibit the court from authorizing the foreign representative to employ turnover powers available under §§ 542 and 543;[15] rather, access to turnover powers under § 1521(a)(7) is conditioned upon sufficient protections being provided to creditors and other interested parties under § 1522, which requires a balancing of the respective parties' interests.  *See* 11 U.S.C. § 1522(a) ("The court may grant relief available under section [] 1521 . . . only if the interests of creditors and other entities, including the debtor, are sufficiently protected."); *SNP Boat Serv. S.A. v. Hotel Le St. James*, 483 B.R. 776, 784 (S.D. Fla. 2012); *In re Qimonda AG Bankr. Litig.*, 433 B.R. 547, 556-58 (E.D. Va. 2010); *CT Investment Mgmt. Co., LLC v. Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012).

An analogous situation regarding § 1521(a)(7) was addressed by the Fifth Circuit in *Condor*.  There, a foreign representative in a foreign main proceeding filed an adversary proceeding in the United States stating claims under the domiciliary law of the foreign debtor, there Nevis, seeking recovery of certain assets which were allegedly fraudulently transferred "to put them out of the reach of creditors during the Nevis proceeding."  *Condor,* 601 F.3d. at 320-21.[16]  While the Fifth Circuit did not address the implications of § 103, it construed § 1521(a)(7)

---

[15] Former Bankruptcy Judge Leif M. Clark has stated:

> Section 1521(a)(7) authorizes the court to grant to the foreign representative the sort of relief that might be available to a trustee appointed in a full bankruptcy case [, which] would include, most importantly, an order requiring the turnover of property belonging to the debtor and the turnover of property in the hands of a custodian [under § 543]. This can be an important power when [a foreign representative] is faced with the existence of a receiver that might previously have been appointed at the request of a creditor.

CLARK, CHAPTER 15 § 7[2]; *see also* Leif M. Clark & Karen Goldstein, *Sacred Cows: How to Care for Secured Creditors' Rights in Cross-Border Bankruptcies*, 46 TEX. INT'L L.J. 513, 529 ("An additional section that a foreign representative might think to use in making a request for turnover of assets is § 1507.").

[16] In *Condor*, the Fifth Circuit reversed the district court's dismissal of the case for lack of jurisdiction. *Condor*, 601 F.3d at 329. The Southern District of New York in *In re Fairfield Sentry Ltd*. cited *Condor* for the proposition that, while § 1521(a)(7) allows a bankruptcy court to authorize a foreign representative to bring avoidance actions other than under §§ 544, 545, 547, 548, 550, and 724(a), including foreign law based actions, "[s]ection 1521(a)(7) does not confer core jurisdiction on the Bankruptcy Court*." In re Fairfield Sentry Ltd.*, 458 B.R. 665, 682 (S.D.N.Y. 2011). Said otherwise, the *Fairfield Sentry* court differentiated between a bankruptcy court having jurisdiction to

11

under the dictate that "additional exceptions are not to be implied, in the absence of contrary legislative intent," and considering the broad scope of relief made available to foreign representatives upon recognition. *Id.* at 324, 325 (citing *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616-17 (1980)). The Fifth Circuit also stated that while "it is plain that relief under the listed sections is excluded, the statute is silent regarding proceedings that apply foreign law, including any rights of avoidance such law may offer . . . ." *Id.* The court concluded that, "[a]s Chapter 15 was intended to facilitate cooperation between U.S. courts and foreign bankruptcy proceedings, we read section 1521(a)(7) in that light and hold that a court has authority to permit relief under foreign avoidance law under the section." *Id.* at 329.

Similarly, §§ 542 and 543 are not expressly excluded from § 1521(a)(7). Given the broad scope of relief available under Chapter 15, additional exceptions to § 1521(a)(7) should not be implied,[17] and turnover may be a valuable tool for Petitioners to enable them to obtain control over property and records necessary for the administration and realization of assets within the United States.

This Court recognizes that few courts have reached the specific issue here of whether Chapter 15 allows a foreign representative to utilize the turnover provisions of §§ 542 and 543; these courts have generally recognized a foreign representative's right to seek turnover, but not

---

allow a foreign representative to bring an action versus having constitutional authority to hear and determine that action. *But see In re British Am. Ins. Co. Ltd.,* 2013 WL 765373, at *19-22, 2013 (Bankr. S.D. Fla. Feb. 28, 2013) (disagreeing with *Fairfield Sentry* analysis, and concluding that "section 157(b)(2)(P) should be read to include within the ambit of core chapter 15 matters the recognition procedure and requests for relief covered by the various provisions of chapter 15"). Neither *Fairfield Sentry* nor *Condor* reached the issue of whether a foreign representative needed bankruptcy court approval under § 1521(a)(7) prior to bringing a foreign law based avoidance action. In *British American* Judge Kimball in a detailed analysis stated, *inter alia*, that "[s]ection 1509(b)(1) does not limit the right of a foreign representative to sue in a state or federal court in the United States to collect or recover a claim that is property of the debtor, a matter specifically addressed in section 1509(f) . . . [n]or does section 1509 in any way limit the jurisdiction of any state or federal court to hear such a claim." *British Am.*, 2013 WL 765373, at *15 n.18.

[17] With respect to § 1521(a)(7) relevant legislative history states that, "the exceptions in (a)(7) relate to avoiding powers . . . This section does not expand or reduce the scope of relief currently available under sections 105 and 304 . . . " H.R. REP. NO. 109-31, at 116. As discussed *infra*, former § 304(b) expressly permitted turnover as well as any other appropriate relief as guided by considerations of comity.

via § 542 and § 543, but rather, under § 1521(a)(5) and (b). *Compare In re Lee,* 472 B.R. 156, 182 (Bankr. D. Mass. 2012) (stating that § 542 was inapplicable in Chapter 15 pursuant to § 103, but that the burden of proof contained in § 542 was applicable in determining whether the foreign representatives had satisfied their burden in establishing their entitlement to turnover under § 1521(a)(5) and (b)), *and In re Int'l Banking Corp. B.S.C.,* 439 B.R. 614, 627 (Bankr. S.D.N.Y. 2011) (the court considered the foreign representative's turnover motion solely under §1521(a)(5) and (b), although there is no indication that §§ 542 or 543 relief was sought), *and In re Atlas Shipping A/S*, 404 B.R. 726 (Bankr. S.D.N.Y. 2009) (holding that § 543 was inapplicable in Chapter 15, as turnover is provided for under §§ 1521(a) and (b)), *with In re ABC Learning Ctr.'s, Ltd.,* 445 B.R. 318, 341 (Bankr. D. Del. 2010) (allowing without discussion the right to seek turnover under §§ 542 and 543). This Court respectfully disagrees with the contrary cases, and based on the statutory construction analysis above, case law under prior § 304 and the interests of international comity discussed *infra,* concludes that turnover may be sought via §§ 542 and 543, but only so long as appropriate conditions are imposed as required under § 1522.

While this Court will entrust the foreign representatives with the administration and realization of the Offshore Funds' assets within the territorial jurisdiction of the United States under § 1521(a)(5),[18] it also will allow Petitioners to seek turnover under § 542 or § 543; however, they may only do so by motion on notice with an opportunity for a hearing to the adverse parties. In that way, this Court can make a case-by-case analysis of whether to order

---

[18] No protections under § 1522 are required at this juncture to grant the foreign representatives authority to administer and realize upon the Offshore Funds' assets within the territorial jurisdiction of the United States under § 1521(a)(5), given the broad powers granted them by the Cayman Court, and given that no assets are sought to be moved from the United States at this time. Moreover, this Court does not need to determine whether protections under § 1522 are required to grant the foreign representatives authority to distribute all or part of the Offshore Funds' assets within the territorial jurisdiction of the United States under § 1521(b), as Petitioners have not requested § 1521(b) relief.

turnover in a specific circumstance and, if so, under such conditions as § 1522 requires to sufficiently protect the interests of creditors and the affected parties.

This same protection will also apply to the use of discovery under § 1521(a)(4) – discovery will only be permitted by motion on notice with an opportunity for hearing to the adverse parties and by making examination and production of documents under Rule 2004 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") available, with any discovery to be allowed to be subject to conditions imposed in accordance with § 1522. *See, e.g., In re Millenium Global Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 347 (Bankr. S.D.N.Y. 2012) (although not reaching the issue, the court discussed that granting the foreign representative broad discovery rights under § 1521(a)(4) by making the full scope of Bankruptcy Rule 2004 available would be consistent with the main purposes of Chapter 15 and former § 304).

### *Former § 304 of the Bankruptcy Code Does Not Conflict with this Court's Analysis of § 1521(a)(7)*

The legislative history to Chapter 15 directs courts to use case law interpreting former 304 in interpreting current Chapter 15 issues, unless the former 304 is contradicted by the current provisions of Chapter 15. *See* H.R. REP. NO. 109-31, at 145 (2005), 2005 WL 832198; *see Condor*, 601 F.3d at 328. This Court finds no conflict between prior § 304 and the analysis herein of §§ 1521(a)(7) and 1522, and therefore will consider case law interpreting prior § 304.

Former § 304 authorized granted courts to order turnover of estate property upon request of a foreign representative.[19] *Atlas*, 404 B.R. at 734. Although former § 304 "was more limited in scope than Chapter 15, it provided significant discretionary relief", and required courts to

---

[19] Former § 304 provided that, "the court may -- order turnover of the property of such estate, or the proceeds of such property, to such foreign representative"; or order other appropriate relief. 11 U.S.C. § 304(b) (2000), repealed by Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") § 802(d)(3), 119 Stat. at 146.

"exercise discretion in the spirit of comity and in the interests of the parties."[20] *Condor*, 601 F.3d at 328.

Prior to the enactment of Chapter 15, several courts had suggested that turnover powers available under §§ 542 and 543 were not available to a foreign representative under a case commenced under former § 304, as former § 304(b) specifically authorized turnover. *See Ma v. Cont'l Bank, N.A.*, 905 F.2d 1073, 1075 (7th Cir. 1990) (concluding that former § 304(b) not § 542 would permit the foreign representative to direct the stakeholder to surrender assets); *In re Treco*, 229 B.R. 280, 292 (Bankr. S.D.N.Y. 1999), *aff'd*, 239 B.R. 36 (S.D.N.Y. 1999), *rev'd on other grounds*, 240 F.3d 148 (2d Cir. 2001) (stating that § 542 was "inapplicable in ancillary cases" commenced under former § 304); *see generally In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 357 (2d Cir. 1992) ("[A] § 304 proceeding is not a bankruptcy case that implicates the full range of procedural and substantive provisions applicable to domestic bankruptcies."); *In re Metzeler*, 78 B.R. 674, 677 (Bankr. S.D.N.Y. 1987) ("a foreign representative may assert, under § 304, only those avoiding powers vested in him by the law applicable to the foreign estate.")

---

[20] In authorizing turnover, former § 304(c) directed courts to consider:

> what will best assure an economical and expeditious administration of such estate consistent with–
>
> (1) just treatment of all holders of claims against or interests of such estate;
>
> (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>
> (3) prevention of preferential or fraudulent dispositions of property of such estate;
>
> (4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;
>
> (5) comity; and
>
> (6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 304(c) (2000), repealed by BAPCPA § 802(d)(3).

Here, as noted above, Chapter 15 does not have a specific provision authorizing turnover under § 542 or § 543, but does have the general incorporation of powers available to a trustee under § 1521(a)(7), subject to the protection of affected interests under § 1522; read together, these provisions harmonize the turnover provisions of former § 304, and do not reflect a legislative intention to eradicate a foreign representative's ability to seek turnover.

*Comity*

"Central to Chapter 15 is comity." *Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de CV (In re Vitro S.A.B. de CV)*, 701 F.3d 1031, 1043 (5th Cir. 2012); *Condor,* 601 F.3d at 321 (Chapter 15 "directs courts [pursuant to 11 U.S.C. § 1508] to 'consider its international origin, and the need to promote an application of th[e] chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions' in interpreting its provisions"); *see* § 1507[21].

As Judge Kimball noted in *British American*:

---

[21] Section 1507 provides:

> (a) Subject to the specific limitations stated elsewhere in this chapter the court, if recognition is granted, may provide additional assistance to a foreign representative under this title or under other laws of the United States.
>
> (b) In determining whether to provide additional assistance under this title or under other laws of the United States the court shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure--
>
> (1) just treatment of all holders of claims against or interests in the debtor's property;
>
> (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>
> (3) prevention of preferential or fraudulent dispositions of property of the debtor;
>
> (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and
>
> (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 1507.

> International uniformity is a primary goal of the Model Law and thus of chapter 15. 11 U.S.C. §§ 1501(a), 1508. UNCITRAL expressed the desire that the Model Law be enacted by adopting countries with as few changes as possible "in order to achieve a satisfactory degree of harmonization and certainty."

*In re British Am. Ins. Co. Ltd.,* 2013 WL 765373, at *2 (Bankr. S.D. Fla. Feb. 28, 2013) (quoting United Nations Commission on International Trade Law (UNCITRAL), Cross-Border Insolvency: Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency, at part 2 ¶ 12, U.N. Doc. A/CN.9/442 (Dec. 19, 1997), *available at* http://www.uncitral.org/pdf/english/texts/insolven/insolvency-e.pdf ["Model Law"]).  Comity has been defined as the "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protections of its laws."  *Vitro,* 701 F.3d at 1043-44, quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).  Post-recognition relief, such as the additional relief sought by Petitioners, "is largely discretionary and turns on subjective factors that embody principles of comity."  *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008); *British Am.*, 2013 WL 765373, at *25 (same).

Petitioners' general request for the use of § 542 or § 543 powers pursuant to § 1521(a)(7) is consistent with principles of international comity.  As noted in *Condor*, while § 1521(a)(7) allows a bankruptcy court to grant a foreign representative additional relief other than under §§ 522, 544, 545, 547, 548, 550, and 724(a), "[t]his exception does not exist in the Model Law." *Condor*, 601 F.3d at 323.  The Model Law at Article 21 would provide for "[g]ranting any relief that may be available to [insert the title of a person or body administering a reorganization or liquidation under the law of the enacting State] under the laws of this State."  Model Law, Art. 21 at ¶ 1(g).  The Model Law at Article 22 would require that for any grant of relief under

17

Article 21, "the court must be satisfied that the interests of the creditors and other interested persons, including the debtor, are adequately protected."[22] Model Law, Art. 22 at ¶ 1. Thus, with the limitations in § 1521(a)(7) already existing, a further curtailment of a foreign representatives powers by denying access to §§ 542 and 543 could potentially be inconsistent with principles of comity; a United States based trustee or examiner authorized under§ 1505[23] to act in a foreign country may want broader access to the laws of the foreign country adopting the Model Law intact or virtually intact, including having access to any rights of turnover available under foreign law.

As Judge Kimball noted in *British American*, the Model Law has been enacted in the following countries: Australia (2008), British Virgin Islands, overseas territory of the United Kingdom of Great Britain and Northern Ireland (2003), Canada (2005), Colombia (2006), Eritrea (1998), Great Britain (2006), Greece (2010), Japan (2000), Mauritius (2009), Mexico (2000), Montenegro (2002), New Zealand (2006), Poland (2003), Republic of Korea (2006), Romania (2002), Serbia (2004), Slovenia (2007), South Africa (2000), Uganda (2011), and the United States of America (2005). *British Am.*, 2013 WL 765373, at *2; UNCITRAL, Status: 1997 - Model Law on Cross-border Insolvency, http://www.uncitral.org/uncitral/en/uncitral_texts/insolvency/1997Model_status.html (last visited March 12, 2013).[24] While the Cayman Islands is not listed as a country adopting the Model Law, Petitioners were authorized under Section 110(2)(b) of the Companies Law of the Cayman

---

[22] Section 1522 changed this concept from adequately protected to sufficiently protected to avoid confusion with other notions of adequate protection found in the Bankruptcy Code. *See* CLARK, CHAPTER 15 § 7[2], n.41.

[23] Section 1505 provides, "[a] trustee or another entity [] may be authorized by the court to act in a foreign country on behalf of an estate created under section 541. An entity authorized to act under this section may act in any way permitted by the applicable foreign law." 11 U.S.C. § 1505.

[24] To the extent any of these enacting countries allow turnover or a similar power to a person or body administering the reorganization or liquidation, a United States representative would potentially want access to those same powers, subject to the same conditions of protection of potentially affected parties required under Model Law Section 22.

Islands, and "without the further sanction of intervention of the Court" to, *inter alia*, "take possession of, collect and get in the property of the Company and for that purposes to take all such proceedings as they consider necessary." Verified Petition, Order of the Cayman Court, 6 April, 2011. [dkt item 3-1]. This authority to act from the Cayman Court would appear to be supported by allowing the foreign representatives to seek turnover in the United States.

## Conclusion

For the foregoing reasons, this Court will entrust the foreign representatives with the administration and realization of the Offshore Funds' assets within the territorial jurisdiction of the United States under § 1521(a)(5), will authorize Petitioners to seek turnover of any of the Offshore Funds' assets located within the territorial jurisdiction of the United States under § 542 or § 543, and will permit Petitioners to seek discovery or seek examination or production of documents pursuant to Bankruptcy Rule 2004, subject to the requirement that any request for turnover or for discovery must be sought by motion on notice in accordance with Bankruptcy Rule 2002.

An order consistent herewith shall issue.

**Dated: March 19, 2013**  
**Central Islip, New York**

_____  
**Alan S. Trust**  
**United States Bankruptcy Judge**